IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THOUNE, WILLIAM E.,

      Plaintiff,

vs.                                                                                                    No.  99cv1106 LH/JHG

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

      This matter is before the Court on Plaintiff's (Thoune's) Motion to Reverse or Remand Administrative Decision, filed May 25, 2000.  The Commissioner of Social Security issued a final decision denying Thoune's application for disability insurance benefits and supplemental security income.  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds the motion to remand is not well taken and recommends that it be DENIED.

      Thoune, now fifty years old, filed his application for disability insurance benefits on May 2,1997, alleging disability since July 31, 1985, due to chronic back pain, a knee injury, and post-traumatic stress disorder. Thoune has a general equivalency degree and past relevant work as a yardman for a lumberyard and as a forklift operator. The Commissioner denied Thoune's application for disability insurance benefits both initially and on reconsideration.  On June 11, 1998, the ALJ held an administrative hearing.  On September 25, 1998, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding Thoune had a "severe combination of

impairments deriving from alcohol and marijuana abuse, a dysthymic disorder and antisocial personality disorder, and the residual effects of a laminectomy at L4-5, with a mild degree of bulging at this level." Tr. 13. However, the ALJ found Thoune did not have any disorder or combination of disorders meeting or equaling in severity any of the disorders described in the Listing of Impairments, Subpart P, Appendix 1. *Id.* The ALJ also found Thoune did not have a medically determinable impairment "relative to the residual effects of a fracture of the right tibia and fibula." Tr. 14. The ALJ found Thoune had fractured his right tibia and fibula after the date he was last insured for disability insurance benefits. *Id.* The ALJ further found Thoune retained the residual functional capacity (RFC) for sedentary work. Thoune filed a Request for Review of the decision by the Appeals Council. On August 4, 1999, the Appeals Council denied Thoune's request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Thoune seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence

of record must be considered in making those findings, *see Barker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989). "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson v. Sullivan*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20

3

C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

In support of his motion to reverse or remand, Thoune makes the following arguments: (1) the decision of the ALJ was not based upon substantial evidence on the record; (2) the ALJ improperly completed the OHA Psychiatric Review Technique Form; (3) the ALJ failed to properly analyze the effect of his alcoholism/drug abuse in light of the new laws and regulations on his ability to work; (4) the ALJ erred in finding he was not a credible witness; and (5) the ALJ erred in applying the Medical-Vocational Guidelines (grids) when he had substantial nonexertional impairments of pain and mental disorders.

Thoune claims the ALJ "failed to properly analyze the effect of [his] alcoholism and drug abuse in light of the new laws and regulations on [his] disability." Pl.'s Mem. in Supp. of Mot. to Reverse or Remand at 16. The Court disagrees. In 1996, Congress amended the Social Security Act to provide that '[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). Under the regulations, the key factor the Commissioner must examine in determining whether drugs or alcohol are a contributing factor to the claim is whether the Commissioner would still find the claimant disabled if he or she stopped using drugs or alcohol. 20 C.F.R. § 416.935(b)(1). Under this regulation, the ALJ must evaluate which of plaintiff's current physical and mental limitations would remain if plaintiff stopped using alcohol and/or drugs and then determine whether any or all of plaintiff's remaining limitations would be disabling.

4

The regulations make clear that a finding of disability is a condition precedent to an application of 42 U.S.C. § 423(d)(2)(C). 20 C.F.R. § 416.935(a). Therefore the Commissioner must determine whether a plaintiff is disabled prior to finding that alcoholism or drug addiction is a contributing material factor. *Id.* The ALJ must then determine whether plaintiff would still be found disabled if he or she stopped abusing alcohol and/or drugs. 20 C.F.R. § 416.935(b)(1). If so, then the alcohol abuse or drug addiction is not a contributing factor material to the finding of disability. 20 C.F.R. § 416.935(b)(2)(ii). If, however, the plaintiff's remaining impairments would not be disabling without the alcohol or drug abuse, then the alcohol or drug abuse is a contributing factor material to the finding of disability. 20 C.F.R. § 416.935(b)(2)(i).

In this case, the ALJ properly applied the law and concluded Thoune was not disabled by non-substance abuse related impairments. At step-two of the sequential evaluation process, the ALJ found Thoune had a severe combination of impairments deriving from alcohol and marijuana abuse, dysthymic disorder,[1] and antisocial personality disorder. The ALJ then found Thoune "had no other physical or mental disorder, or combination of disorders, meeting or equaling in severity any of the disorders described in the Listing of Impairments, Subpart P, Appendix 1." Tr. 14. The ALJ then evaluated Thoune under Listing 12.09[2] and concluded Thoune was disabled because of his continuous abuse of alcohol and marijuana. The ALJ found as follows:

---

[1] Dysthymia is a chronic mood disorder manifested as depression for most of the day, more days than not, accompanied by some of the following symptoms: poor appetite or over-eating, insomnia or hypersomnia, low energy or fatigue, low self-esteem, poor concentration, difficulty making decisions, and feelings of hopelessness. *Stedman's Medical Dictionary* 536 (26th ed. 1995).

[2] Listing 12.09 is structured as a reference listing. It serves only to indicate which of the other listed mental or physical impairments must be used to evaluate the behavioral or physical changes resulting from regular use of addictive substances. *See* Listing 12.00A.

5

It is apparent that during the period under review, the claimant had behavioral changes derived from the daily, significant use of alcohol and marijuana that had a primary effect on his central nervous system.

* * * * * * * * * *

[I]t is apparent that alcohol and marijuana abuse played a material and significant role in his mental condition prior to 31 March 1989 as documented in the reports in, and shortly after, this period. Moreover, it is apparent that his Axis I diagnosis of dysthymic disorder was secondary to the claimant's alcohol and marijuana abuse (Exhibit 19F, at 16).

I have also evaluated the claimant's mental impairments under the other Listing sections applicable to other mental conditions described by various evaluators and determined to be present, or aggravated, as a result of his alcohol and marijuana abuse, specifically the observed presence of post-traumatic stress disorder (Exhibit 15F, at 11-13), dysthymic disorder, and an antisocial personality disorder (Exhibit 15F, at 112-113). In this regard, the question is whether any symptoms relative to these conditions would continue if the claimant had remained abstinent from substance abuse. The claimant has the burden of establishing that without the damage and effects of substance abuse, his residual mental impairment would have precluded the sustained mental activities necessary to perform basic work activities.

During the period under review, his treating source was of the specific opinion that his mental condition was not the result of post-traumatic stress disorder ("PTSD")(Exhibit 15F, at 112-113). On the contrary, psychiatric sources appear to be persuaded his problems are secondary to his continued drinking (Exhibit 19F, at 16-17). Therefore, with regard to complaints of mental problems secondary to PTSD, a dysthymic disorder, and personality disorder, I am persuaded these conditions were secondary to drug and alcohol abuse during the period under review. There is no credible support in the record that the claimant's PTSD and personality disorders would limit his ability to perform the mental activity necessary for work functions if he ceased abusing alcohol and drugs during the relevant period.

* * * * * * * * * *

I am persuaded that during the period under review, the claimant had no mental condition that was not a direct result of his unabated alcohol and marijuana abuse. It is apparent the claimant never maintained a period of abstinence from alcohol and marijuana abuse during the relevant period; therefore, it is impossible to determine what mental limitations might have persisted in the absence of his use of alcohol and marijuana. The claimant has failed in his burden of demonstrating any impairment relative to PTSD, dysthymia or a personality disorder would have

6

persisted if he had ceased alcohol and drug abuse during the relevant period from 31 July 1985 through 31 March 1989.

Tr. 15, 16. The medical evidence supports the ALJ's finding. As noted above, the period under review is from July 31, 1985 to March 31, 1989. Yet, on October 26, 1989, Thoune was admitted to the VA Medical Center in Waco, Texas in an acutely intoxicated state. Tr. 416, 476-77. At that time, Dr. Armando M. Santiago, Thoune's treating psychiatrist[3], diagnosed Thoune as suffering from dysthymic disorder **secondary to continuous alcohol and marijuana abuse**. Tr. 416. Thoune was also hospitalized in 1990 for "detoxification for alcohol and heroin." Tr. 181. On June 26, 1991, Thoune was admitted to the VA Medical Center in Waco, Texas. Tr. 225. That visit reflects alcohol and marijuana abuse. *Id.* Thoune was again hospitalized from October 13, 1993 to November 3, 1993 at the VA Medical Center in Waco, Texas. Tr. 205. At that time, he tested positive for marijuana abuse. Tr. 206. His laboratory studies were also abnormal; the results were "consistent with alcohol abuse." *Id.* Additionally, Thoune was hospitalized from October 13, 1995 to November 2, 1995 for "polysubstance abuse active (ethanol and marijuana)." Tr. 181. During that hospitalization, Thoune admitted to continued use of marijuana and alcohol and tested positive for marijuana. Tr. 183. In 1994, Thoune was admitted to the VA Medical Clinic in Waco, Texas. Thoune was admitted on July 17, 1994 and discharged on October 26, 1994. During this lengthy hospitalization, Thoune had multiple passes to leave the hospital. Tr. 199. However, upon his return, his urine was tested for drug abuse and

---

[3] The regulations provide that the agency generally will give more weight to medical opinions from treating sources than those from non-treating sources and that the agency will give controlling weight to the medical opinion of a treating source if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2).

7

tested negative. *Id.* During this period of sobriety, the attending physician reported Thoune interacted well and appropriately with other veterans, was receptive to feedback, maintained a positive attitude, behaved properly, was pleasant, cooperative, and related well to the staff and other patients. Tr. 200. Thoune's physician also reported Thoune had improved and at discharge had increased his coping and social skills. *Id.* This period of sobriety indicates Thoune's mental impairments abated or at least improved when not abusing alcohol or drugs. Accordingly, substantial evidence supports the ALJ's finding that, "during the period under review, the claimant had no mental condition that was not a direct result of his unabated alcohol and marijuana abuse." Tr. 16. In addition, the ALJ properly applied the regulations governing substance abuse. *See* 20 C.F.R. § 416.935.

As to Thoune's claim that he suffered from post-traumatic stress disorder (PTSD), the medical evidence indicates that, during the period under review, Thoune's treating physician opined that his condition was not the result of PTSD. Tr. 370, 371. Specifically, on September 16, 1987, Dr. Trusevich, a staff psychiatrist at the VA Medical Center in Waco, Texas, concluded there was not enough substantiation to classify Thoune as suffering from PTSD. Tr. 371. On October 20, 1988, Dr. Gregory, a clinical psychologist, also screened and interviewed Thoune for "possible PTSD" and for admission to the PTSD program. Tr. 460. At that time, the evaluation team found Thoune had "many problems unrelated to Vietnam" and did not accept him for the intensive PTSD program. *Id.* On January 5, 1989, Thoune was again rejected by the PTSD program. Tr. 429. At that time, the clinical notes indicate Thoune "suffered no trauma out of the normal realm of being in a combat zone." *Id.* Additionally, during his October 26, 1989 hospitalization, Dr. Santiago reported that Thoune's chief complaint was that he suffered from

8

PTSD. Tr. 416. However, Dr. Santiago specifically noted that Thoune had not reported flash backs or nightmares about his Vietnam experiences throughout his hospitalization. Tr. 417. Notably, Dr. Santiago did not diagnose Thoune with PTSD. Instead, Dr. Santiago diagnosed Thoune with dysthymic disorder secondary to continuous alcohol and marijuana abuse. Tr. 416. Additionally, in his disability report, Thoune claimed he became disabled due to PTSD in September, 1996. Tr. 67. Therefore, substantial evidence supports the ALJ's finding that Thoune's mental impairments, during the period of review, were not the result of PTSD but were secondary to drug and alcohol abuse.

Thoune also contends the ALJ improperly completed the Psychiatric Review Technique (PRT) Form. Thoune claims the ALJ "failed to list sleep disturbance, feeling of guilt or worthlessness, difficulty concentrating or thinking, thoughts of suicide, hallucinations, delusions, or paranoid thinking under Listing 12.04." Pl.'s Mem. in Supp. of Mot. to Remand at 9. However, even if the ALJ did not consider these symptoms, nonetheless, he found that Thoune met the criteria of Listing 12.04. Tr. 26, 27. The ALJ then found Thoune's drug and alcohol abuse was a material factor of disability. Tr. 16. Substantial evidence supports the ALJ's conclusions on the PRT form. *See Cruse v. United States Dep't of Health & Human Servs.*, 49 F.3d 614, 617-18 (10th Cir. 1995).

Thoune next argues the ALJ erred in finding he was not a credible witness. Credibility determinations are peculiarly the province of the finder of fact and will not be upset when supported by substantial evidence. *Diaz v. Secretary of Health and Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."

9

Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988).

The ALJ found Thoune was not credible and linked his credibility determination to the evidence. Tr. 19. Substantial evidence supports the ALJ's credibility determination. Additionally, on July 18, 1991, Thoune denied a history of psychiatric disorder or alcoholism. Tr. 140. On February 21, 1995, Thoune reported to Dr. Kennedy that he did not drink. Tr. 179. On March 26, 1995, Thoune reported he last used drugs in 1990. Tr. 197. However, the record reflects that Thoune admitted to continuous alcohol and drug abuse during his October 13, 1995 to November 2, 1995 hospitalization.

Finally, Thoune contends the ALJ erred when he applied the grids to his case because of his non-exertional limitations. Although a vocational expert should be consulted when a "claimant's residual functional capacity is diminished by both exertional and nonexertional impairments," *Hargis v. Sullivan*, 945 F.2d 1482, 1491 (10th Cir. 1991), this requirement applies only when the exertional and nonexertional impairments limit the claimant's ability to perform the full range of work within a particular exertional category, *id.* at 1490, 1492. When an ALJ finds, based on substantial evidence, that a claimant's nonexertional impairments do not limit the range of jobs available to him, the grids may be applied conclusively. *See, e.g., Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994).

In this case, the ALJ found that, prior to the expiration of his insured status, Thoune had a RFC consistent with sedentary work. Tr. 20. The ALJ considered Thoune's pain and his alleged limitations but afforded limited weight to his subjective complaints. Tr. 19. The ALJ also cited to the record to support his determination of nondisability. Tr. 19-21. The ALJ considered the fact that Thoune had been determined to be disabled to some extent under Texas worker's

compensation law. However, disability determinations by other agencies are not binding on the Commissioner. 20 C.F.R. §§ 404.1504, 416.904; *Musgrave v. Sullivan*, 966 F.2d 1371, 1375 (10th Cir. 1992). Finally, the ALJ found that Thoune's "treating sources did not limit his work activity during the period under review other than to advise him to avoid heavy lifting." Tr. 19. The record supports this finding. On August 13, 1985, Dr. Slade, a neurologist, evaluated Thoune and his impression was as follows:

> I'm not sure what's wrong with this patient! I would feel inclined to attribute his pain syndrome to a musculoskeletal strain injury but quite frankly I think he has magnified his symptoms a great deal. I am not sure if there is a great deal of functional overlay or whether he is simply trying to drag out a disability type claim through compensation. It is conceivable that he could have something more legitimate such as a herniated disk but quite frankly I think this is somewhat unlikely.

Tr. 137. The ALJ found Thoune did not meet Listing 1.05 and gave his rationale for his finding. Tr. 17. Although Thoune may have had a herniated nucleus pulposus at L4-5 (Tr. 158), the ALJ found the medical evidence did not establish the presence of significant motor loss with muscle weakness and sensory and reflex loss which is required to meet Listing 1.05C. *Id.* The Court has reviewed the evidence and finds substantial evidence supports the ALJ's determination of nondisability.

## RECOMMENDED DISPOSITION

The ALJ applied correct legal standards and substantial evidence supports the decision. The motion to reverse or remand administrative agency decision should be denied, and this case

should be dismissed.

_____
**JOE H. GALVAN**
**UNITED STATES MAGISTRATE JUDGE**

**<u>NOTICE</u>**

Within ten days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to 28 U.S.C. § 636 (b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.